(C.D. 4872)

F. W. MYERS & Co., INC., PLAINTIFF v. UNITED STATES, DEFENDANT

Consolidated Court No. 72-5-01183

■

(Decided September 11, 1980)

*Arter Hadden & Hemmendinger* (*Barry E. Cohen* at the trial and on the brief); *Covington & Burling* (*Lyn Marie Schlitt* at the trial; *Harvey M. Applebaum* and *Lyn Marie Schlitt* on the brief); *Patrick H. Bowen*, Assistant General Counsel, Kennecott Copper Corporation, of counsel; for the plaintiff.

*Alice Daniel*, Assistant Attorney General; *Joseph I. Liebman*, Attorney in Charge, Field Office for Customs Litigation (*Robert H. White* at the trial and on the brief), for the defendant.

RICHARDSON, Judge: The merchandise in this case consists of five iron powders imported from Canada in 1971 or 1973 and known commercially as Atomet 2810, 2815, 2827, 2831, and 2835.[1] Upon entry into the United States they were classified in liquidation under TSUS item 608.05 as modified by T.D. 68–9 as other powders other than alloy iron or steel at the duty rate of 0.3 cent per pound. And plaintiff claims that the powders should have been classified in liquidation under TSUS item 608.02 as modified by T.D. 68–9 as sponge iron powder not containing chromium in excess of 0.2 percent, molybdenum in excess of 0.1 percent, tungsten in excess of 0.3 percent, and vanadium in excess of 0.1 percent [see headnote 4, subpart B, part 2, schedule 6, TSUS] at the duty rate of 12 cents per ton for the 1971 entry, and free of duty for the 1973 entries.

The base powder, Atomet 28, has heretofore been adjudged by this court to be classifiable as a sponge iron powder under item 608.02 in *F. W. Myers & Co., Inc.* v. *United States*, 76 Cust. Ct. 51, C.D. 4635 (1976), the record of which has been incorporated into the record in this case. And the suffixes 10, 15, 27, 31, and 35, which are added to the Atomet 28 designation in the importations at bar, are indicative of various *additives* to the base powder itself. Thus, the primary question before the court is whether these *additives*, consisting of small amounts of (1) a lubricant [either acrawax "C," zinc stearate, or stearic acid], as in Atomet 2827, or (2) a lubricant plus graphite, as in Atomet 2810 and 2815, or (3) a lubricant, graphite, and copper, as in Atomet 2831, or (4) a lubricant and copper, as in Atomet 2835, remove the powders from item 608.02 classification as sponge iron powder. In all cases, the base powder [Atomet 28 iron] content by weight ranges from a low of 96.6 percent as in Atomet 2831 to a high of 99.01 percent as in Atomet 2827.

---

[1] The powders were produced by Quebec Metal Powders, Ltd., the Canadian manufacturer and real party in interest.

In opposing classification of the subject merchandise as sponge iron powders, defendant places much reliance upon a so-called industry-wide usage of the term "pre-mix" to denote a cleavage between the imported powders which it regards as being "pre-mixes" and the *unmixed* powder which it regards as constituting the premier condition for a sponge iron powder. However, testimony adduced from industry witnesses called by defendant on the matter are not determinative in the court's view. While an attempt has been made to regulate nomenclature and standardize terminology in the powder metallurgy industry subsequent to the adoption of the TSUS, uniformity has not been achieved in the industry with respect to usage of the term "pre-mix". In fact, it was brought out in the testimony of one of defendant's witnesses that the term "pre-mix" which, at best, is voluntary and unbinding, has on occasion been disregarded by the witness' own company.

Of greater significance is testimonial evidence in the record relative to powder porosity and industry practice in regard to additives. Testimony indicates that porosity is unaffected by the presence of additives. Dr. Joseph Capus, Quebec Metal Powders' technical director, testified that *blending* does not change the porosity of the powder because the additives mixed in the blend are only mixed physically, and there is no reaction between the iron and the additives in that state. And this testimony was corroborated by the testimony of George Abbott, who, at one time was general manager of A. O. Smith-Inland, a former domestic iron powder producer, as well as by customs laboratory reports of physical and chemical analyses of two of the blends in issue which conclude that the powders have the appearance of a sponge iron powder.

Additionally, witnesses from both the domestic industry and the Canadian industry agreed that unblended sponge iron powder alone cannot be used in conventional powder metallurgy; that at least a lubricant must be added to the powder. And they confirmed that blends of sponge iron powder with copper, graphite (carbon), and lubricants are very common in the industry. According to the witnesses Capus and Abbott, these additives introduce no new properties to the iron but only enhance or improve existing properties such as hardness, strength, or machineability in the final sintered product.

Defendant suggests that the only additives which can be identified with sponge iron powder for classification purposes are those provided for in headnote 4, subpart B, part 2, of TSUS Schedule 6, namely, chromium, molybdenum, tungsten, and vanadium. However, the court does not find the reference in headnote 4 to these elements to constitute a *limitation* on the permissible additives to sponge iron powder classifiable under the superior heading "Sponge iron; iron or

steel powders". Headnote 4 is common to three other superior headings in subpart B, including the iron and steel products provision to which attention is drawn by defendant under point B of its brief at page 33.

It is to be noted that under headnote 2(g) steel is defined as "an alloy of iron and carbon which is malleable as first cast." And, immediately following this definition the headnote states, *"Steel may contain other elements intended to enhance one or more properties* and may contain elements unavoidably retained from raw materials, but iron must predominate, by weight, over each of the other elements." [Italic added.] Hence, if the elements referred to in headnote 4 were written into subpart B as a limitation on the presence of elements in iron, the definition of steel as set forth in headnote 2, supra, would be frustrated.

Essentially the same conclusion was reached by the court in *John V. Carr & Sons, Inc.* v. *United States*, 50 Cust. Ct. 29, C.D. 2384 (1963), in connection with a construction of the predecessor provision for sponge iron in paragraph 301 of the 1930 Tariff Act as modified by the Annecy and Torquay protocols to the General Agreement on Tariffs and Trade (GATT). In *Carr*, the Customs Court held "Sponge Iron Powder MP.52" to be properly classifiable under the provision for sponge iron in paragraph 301 as against the Government's contention that the addition of fractional percentages of nickel and molybdenum in the production of the sponge iron cake altered the physical characteristics of the iron, resulting in the production of an alloy iron powder, or an alloy steel. The court said (p. 35):

> * * * the presence of nickel and molybdenum in the commodity results in producing a substance which is commercially used as a hardening additive in the production of automotive parts.

The court further stated (p. 36):

> Molybdenum is an element which gives strength and vitality to sponge iron, thereby adding to its usefulness in the fabrication of engineering parts.

Chromium, molybdenum, tungsten, and vanadium are not *impurities* in sponge iron powder. They are identified in the TSUS as alloying elements (headnote 2(h), subpart B, schedule 6, TSUS). And the court is of the opinion that the reference to these elements in headnote 4 only reflects a tolerance for their presence in the host metal in terms of dutiability without necessarily affecting the classification of the metal itself. See and compare, *United States* v. *Gulf Oil Corporation*, 47 CCPA 32, 40, C.A.D. 725 (1959).

Moreover, with the shift in emphasis in the TSUS metal schedule to weight of metal as the basis for classification and away from the metal in chief value basis of the 1930 and prior tariff acts in conformity

to commercial practice, such concerns as additive costs and admixture of elemental materials, whether metallic or nonmetallic, appear to no longer possess the significance they previously had in influencing classification, and have virtually become casualties of the meta-morphosis. See *"Tariff Classification Study, Schedule 6,"* pages 86 and 88. Certainly, the framers of the TSUS left no doubt that this change in emphasis, initiated with respect to the alloy provisions, carried over into the revision of the metal schedule in general. See id., pages 687–688, remarks of Russell N. Shewmaker, Assistant General Counsel to the Tariff Commission. Thus, in the absence of specific tariff language to the contrary, the mixing or blending of materials, metallic or nonmetallic, with a host metal in conformity to standard powder metallurgical practice is to be regarded as sub-jecting the dominant metal to treatment to improve its properties, but not removing it from classification under the tariff provision which describes it. See headnote 1, part 2, schedule 6, TSUS. And no such inhibiting language appears in either the superior heading to item 608.02 or in the subpart B headnotes preceding item 608.02.

As to item 608.05 under which the imported powders were classified, legislative history indicates that it was not intended as a basket or residual provision (precisely the kind of thing the framers of the TSUS were striving to eliminate). Item 608.05 (unalloyed powders) was substituted for proposed item 608.06 (other powders not mixed with other metal powders) which was derived from paragraphs 5 and 335 of the 1930 Tariff Act, i.e., chemical metal and sand of iron or steel, respectively. See "Tariff Classification Study, Schedule 6," pages 47 and 92; "Tariff Classification Study, First Supplemental Report," pages 150–151.

The most significant thing about this change is the dropping of the language "not mixed with other metal powders" in proposed item 608.06 without a corresponding expansion of the definition of alloy in part 2, headnote 2, of TSUS Schedule 6 to include simple mixtures of metal powders while implying as much in language describing sponge iron powders in items 608.02 and 608.04 which remained intact. See "Tariff Classification Study, Schedule 6," pages 32 and 47. In this manner the draftsmen avoided any possible confusion between powders in which mixtures of metal powders were implicit (sponge iron powders) and those in which such mixtures were not contemplated (chemical metal and sand of iron or steel). This, then constitutes but an additional indication that sponge iron powders were never intended to be classified under item 608.05.

For the reasons stated, the court agrees with plaintiff that the record in this case does not provide a basis for any legal or factual justification for distinguishing between the blended powders in issue

and unblended sponge iron powder such as that the subject of C.D. 4635 for classification purposes. Accordingly, the court finds the powders in issue to be sponge iron powders within the meaning of item 608.02, and so holds.

Judgment will be entered herein accordingly.